## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SMILEDIRECTCLUB, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-583 (CFC) |
| | ) | |
| CANDID CARE CO., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT CANDID CARE CO.'S
## OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com

OF COUNSEL:

*Attorneys for Defendant Candid Care Co.*

Michael P. Sandonato
Sean M. McCarthy
VENABLE LLP
Rockefeller Center
1270 6th Avenue
New York, NY 10020
(212) 307-5500

Edmund J. Haughey
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4000

June 19, 2020

# TABLE OF CONTENTS

Page

I. NATURE AND STAGE OF THE PROCEEDINGS .........................................1

II. SUMMARY OF ARGUMENT ........................................................................1

III. STATEMENT OF FACTS ..............................................................................2

IV. LEGAL STANDARDS....................................................................................6

    A.    MOTION TO DISMISS ........................................................................6

    B.    PATENT INELIGIBILITY UNDER 35 U.S.C. § 101 ..............................7

    C.    DETERMINING PATENT INELIGIBILITY
        AT THE PLEADING STAGE....................................................................8

V. ARGUMENT ...................................................................................................9

    A.    CLAIM 1 IS REPRESENTATIVE.............................................................9

    B.    THE '522 PATENT CLAIMS ARE INVALID UNDER
        35 U.S.C. § 101 BECAUSE THEY ARE DIRECTED TO
        PATENT-INELIGIBLE SUBJECT MATTER ........................................12

        1.    The Claims are Directed to the Abstract Idea
            of Teleorthodontics............................................................................12

        2.    The '522 Patent Claims Lack Inventive Concept ............................19

VI. CONCLUSION ..............................................................................................22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
573 U.S. 208 (2014).................................................................*passim*

*Align Tech., Inc. v. 3Shape A/S,*
339 F. Supp. 3d 435 (D. Del. 2018)............................................*passim*

*Am. Well Corp. v. Teladoc, Inc.,*
191 F. Supp. 3d 135 (D. Mass. 2016)....................................10, 13, 18

*Apollo Finance, LLC v. Cisco Sys., Inc.,*
190 F. Supp. 3d 939 (C.D. Cal. 2016) .............................................13

*Becton, Dickinson & Co. v. Baxter Int'l, Inc.,*
127 F. Supp. 3d 687 (W.D. Tex. 2015) ..................................13, 17, 18

*BSG Tech LLC v. BuySeasons, Inc.,*
899 F.3d 1281 (Fed. Cir. 2018) .......................................................20

*Content Extraction & Trans. LLC v. Wells Fargo Bank, Nat'l Ass'n,*
776 F.3d 1343 (Fed. Cir. 2014) ..................................................11, 22

*Customedia Techs., LLC v. Dish Network Corp.,*
951 F.3d 1359 (Fed. Cir. 2020) .........................................................8

*Elec. Power Grp., LLC v. Alstom S.A.,*
830 F.3d 1350 (Fed. Cir. 2016) .......................................................15

*FairWarning IP, LLC v. Iatric Sys., Inc.,*
839 F.3d 1089 (Fed. Cir. 2016) .........................................................8

*In re Rockefeller Ctr. Prop., Inc. Sec. Litig.,*
311 F.3d 198 (3d Cir. 2002) ...............................................................6

*Intellectual Ventures I LLC v. Capital One Fin. Corp.,*
850 F.3d 1332 (2017)........................................................................21

*Interval Licensing LLC v. AOL, Inc.,*
896 F.3d 1335 (Fed. Cir. 2018) .......................................................15

*IPLearn-Focus, LLC v. Microsoft Corp.*,
 No. 14-cv-00151-JD, 2015 WL 4192092 (N.D. Cal. Jul. 10, 2015),
 *aff'd without opinion*, 667 F. App'x 773 (Fed. Cir. 2016) ................................14

*Mayer v. Belichick*,
 605 F.3d 223 (3d Cir. 2010) ...................................................................6

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
 855 F.3d 1322 (Fed. Cir. 2017) ..............................................................7

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,
 113 F.3d 405 (3d Cir. 1997) ...................................................................6

*Sound View Innovations, LLC v. Facebook, Inc.*,
 204 F. Supp. 3d 655 (D. Del. 2016).........................................................7

*Ultramercial, Inc. v. Hulu, LLC*,
 772 F.3d 709 (Fed. Cir. 2014) ...........................................................8, 13

## Rules and Statutes

35 U.S.C. § 101 ..........................................................................*passim*

Fed. R. Civ. P. 12(b)(6).................................................................*passim*

# I.  NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff SmileDirectClub, LLC ("SDC") filed its Complaint against Defendant Candid Care Co. ("Candid") on April 29, 2020, asserting infringement of U.S. Patent No. 10,636,522 ("the '522 patent").[1]  *See* D.I. 1 at ¶ 1.  The Complaint alleges that Candid infringes independent claims 1, 13, 20, and 24 of the '522 patent (as well as "various dependent claims" that the Complaint does not identify) through its Candid Studios and teledentistry services.  *Id.* at ¶¶ 31, 33, 69, 70.

Candid hereby moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted because the claims of the '522 patent are invalid under 35 U.S.C. § 101.

# II.  SUMMARY OF ARGUMENT

The claims of the '522 patent are patent ineligible under the two-part test of *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).  The claims are directed to the abstract idea of **teleorthodontics: providing dental aligners directly to the patient without the patient ever physically seeing a dentist or orthodontist** and contain no inventive concept that transforms that abstract idea into patent-eligible subject matter.

---

[1]    A copy of the '522 patent is attached as Exhibit A (D.I. 1-1) to the Complaint.

Significantly, in *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435 (D. Del. 2018) (Stark, C.J.), the Court already considered the § 101 subject matter eligibility issue as it relates to four patents in the dental orthodontics space on a motion to dismiss under Rule 12(b)(6). The '522 patent at issue here bears a very strong resemblance to one of the two patents that the *Align* court found invalid, with both the '522 and the invalid Align patent reciting abstract concepts such as capturing three-dimensional data using an intraoral scanner and communicating the three-dimensional data to a computer so that a treatment plan can be generated and approved by an orthodontist. At the same time, the '522 patent is nothing like the two patents that were found patent eligible by the *Align* court, both of which recited concrete technical improvements that are utterly lacking here.

## III.    STATEMENT OF FACTS

The '522 patent, titled "Arrangements for Intraoral Scanning," issued on April 28, 2020. The '522 patent is directed to methods and systems for providing dental aligners directly to patients without the patient ever physically seeing a dentist or orthodontist. *See* '522 patent, col. 2:11-13, 2:32-35, 15:15-26, claims 1, 13, 20, 24; *see also* D.I. 1 at ¶¶ 13, 16, 19, 24.

The Complaint itself—which makes express reference to "the enormously successful SmileShop® *business model* that SDC innovated and *protected with the '522 patent*," D.I. 1 at ¶ 4 (emphasis added)—establishes that

the '522 patent is directed to the general concept of teleorthodontics. The Complaint avers that the "key technological contribution" is the "revolutionary workflow" which offers "non-clinical, in-person interaction" and "non-clinical processing." D.I. 1 at ¶ 3. In other words, the '522 patent claims are directed to a teleorthodontics business model that "allows dentists and orthodontists to diagnose, evaluate, and treat patients remotely," and to do so "using today's technology." *See* D.I. 1 at ¶¶ 16, 19, 24, 25, 33.

Claim 1 is representative:

1.      A method of producing aligners for repositioning one or more teeth of a user, the method comprising:

receiving, by an appointment management system, a request to schedule an appointment at an intraoral scanning site, the intraoral scanning site having an intraoral scanner configured to scan a mouth of a user, the appointment being for a technician to conduct an intraoral scan of the mouth of the user at the intraoral scanning site without a dentist or orthodontist physically seeing the user during the scheduled appointment, wherein the technician is not a dentist or an orthodontist;

scheduling, by the appointment management system, the appointment at the intraoral scanning site in accordance with the request;

generating and communicating, by the appointment management system, a message to a device of the user, the message including a confirmation confirming the scheduled appointment;

conducting, using the intraoral scanner, the intraoral scan at the intraoral scanning site during the scheduled

appointment, the intraoral scan generating three-dimensional data of the mouth of the user;

causing generation, by a treatment plan computing system located at a treatment plan site, of a treatment plan for the user based on the three-dimensional data of the mouth of the user;

receiving an indication of an approval of the treatment plan by a dental or orthodontic professional, wherein the approval is received without the dental or orthodontic professional having physically seen the user;

producing, at a fabrication site, a plurality of aligners based on the treatment plan, the plurality of aligners specific to the user and being configured to reposition one or more teeth of the user in accordance with the treatment plan; and

sending the plurality of aligners from the fabrication site directly to the user, wherein the user receives orthodontic treatment without ever having physically seen the approving dental or orthodontic professional.

'522 patent, claim 1.

As can be seen, the claims recite only highly abstract concepts, such as scheduling an appointment, conducting an intraoral scan, generating a treatment plan, and fabricating and shipping aligners, all "without [the user] ever having seen the approving dental or orthodontic professional." Notably, the claims do not describe any aspects of the implementation, such as for example the manner in which the scan is conducted or how the aligners are fabricated, and instead are focused exclusively on describing the teleorthodontics workflow.

The prosecution history confirms the abstract nature of the claims. During prosecution, the examiner rejected the claims as unpatentable over Breeland (U.S. Patent Publication No. 2002/0188478 A1) in view of another reference. *See* Ex. A, Non-Final Office Action (Dec. 20, 2018), at 4-12; *see also* Ex. B, Response to Non-Final Office Action (Mar. 20, 2019), at 11. In an effort to distinguish its claims, SDC did not point to any technical improvements, and instead argued only that the references did not disclose either (1) providing dental services where the dentist never had seen the patient, or (2) providing aligners directly to the patient. *See* Ex. B at 11. First, SDC argued that "[u]nlike Breeland, amended claim 1 recites that 'the approval is received without the dental or orthodontic professional ***having physically seen*** the user in person.'" *Id.* at 12 (emphasis in original). Second, SDC argued that Breeland required the appliances to be sent to the dental professional, who then provides them to the user, whereas the claimed invention ships the aligners directly to the patient. *Id.* at 13. SDC argued that the other independent claims "include features similar to those recited in Claim 1" and are allowable "for substantially the same reasons as those noted above with respect to Claim 1." *Id.* at 14.

SDC amended the claims further in response to a final office action from the examiner to more clearly point out that the treatment was being provided without the patient ever seeing a dentist or orthodontist, and that the aligners would

be sent directly to the patient. *See* Ex. C, Final Office Action (Apr. 16, 2019), at 3-14; *see also* Ex. D, Response to Final Office Action (July 16, 2019), at 2-3, 5, 7. SDC reiterated the same arguments it made in response to the first office action. *See* Ex. D at 15. And SDC repeated those arguments yet a third time in a request for continued reexamination in order to secure allowance of the claims. *See* Ex. E, Request for Continued Reexamination (Aug. 16, 2019), at 1-3, 5, 7, 15; *see also* Ex. F, Notice of Allowance (Feb. 11, 2020).

## IV.   LEGAL STANDARDS

### A.   MOTION TO DISMISS

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss, the court accepts the factual allegations of the non-moving party as true and draws all reasonable inferences in its favor. *See In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). However, in doing so, the court need not accept as true "bald assertions" or "legal conclusions," *id.* at 216, or "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).

A court's review of a Rule 12(b)(6) motion to dismiss is generally limited to "the complaint, exhibits attached to the complaint, matters of public record, as well as indisputably authentic documents if the complainant's claims are

based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). In a patent case, the court may also consider the prosecution history of the asserted patent, which is a public record. *See Sound View Innovations, LLC v. Facebook, Inc.*, 204 F. Supp. 3d 655, 658-59 (D. Del. 2016) (collecting cases).

### B. PATENT INELIGIBILITY UNDER 35 U.S.C. § 101

Abstract ideas are not patentable. *See Alice*, 573 U.S. at 216. In *Alice*, the Supreme Court set out a two-step framework for identifying patents that claim a patent-ineligible abstract idea. First, the court must determine whether the claims are directed to an abstract idea. *See id.* at 217-18. Second, if the claims are directed to an abstract idea, the court must "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent eligible application." *Id.* (internal quotations omitted). In performing this second step, the court searches for an "inventive concept" or evidence to show that the claim is "significantly more" than a patent on the abstract concept itself. *Id.*

"To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). In evaluating this second step, *Alice* warns that "[s]imply appending conventional steps, specified at a high level of generality, [is] not *enough* to supply an inventive concept." 573 U.S. at 221-22 (emphasis in original) (internal

quotations omitted).  Further, the Supreme Court has emphasized that generic computer implementation of an abstract idea does not transform an abstract idea into a patent-eligible invention.  *Id.* at 223.

In addition, the § 101 requirement is separate and distinct from the novelty (§ 102) and non-obviousness (§ 103) requirements of the patent statute.  In other words, abstract ideas do not become patent eligible simply because they are "new ideas, not previously well known, [or] not routine activity."  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014); *see also id.* at 715 (rejecting argument that "the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete").

### C. DETERMINING PATENT INELIGIBILITY AT THE PLEADING STAGE

Whether a patent is invalid for failure to comply with the requirements of 35 U.S.C. § 101 is a question of law based on underlying facts.  *See Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1362 (Fed. Cir. 2020).  The question of whether a patent fails to satisfy § 101 is properly and frequently decided on a Rule 12(b)(6) motion to dismiss where, as here, the claims are directed to subject matter that is clearly ineligible for patent protection and there are no factual or claim construction disputes pertinent to the challenge that would prevent resolving the eligibility question as a matter of law.  *See, e.g.*, *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016)

("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."); *Align*, 339 F. Supp. 3d at 439, 457-58 (holding certain claims invalid under § 101 on a Rule 12(b)(6) motion).

## V.   ARGUMENT

The Court may decide the patent eligibility issue under § 101 on a Rule 12(b)(6) motion in this case because the claims are clearly directed to subject matter that is ineligible for patent protection.   Moreover, there are no factual disputes or claim construction issues pertinent to this § 101 challenge that preclude granting this motion as a matter of law.

### A.   CLAIM 1 IS REPRESENTATIVE

The method of claim 1 (reproduced *supra* at 3-4) is representative of independent claims 1, 13, 20, and 24.  Method claims 1 and 24 are written from the perspective of the provider of services, whereas method claim 13 is written from the perspective of the patient receiving services; otherwise they are virtually identical.  Claim 20, although purportedly directed to a system, merely recites generic components "configured to" perform the method steps of claim 1.[2]  *See*

---

[2]  Despite purporting to be a system claim, claim 20 also recites the same method steps that SDC relied on to distinguish claim 1 from the prior art during prosecution.  *See* '522 patent, col. 24:9-14 ("wherein the plurality of aligners are sent from at least one or more of the fabrication sites directly to the user for

*Alice*, 573 U.S. at 226 ("[T]he system claims are no different from the method claims in substance. The method claims recite the abstract idea implemented on a generic computer; the system claims recite a handful of generic computer components configured to implement the same idea.").

The Complaint only includes the text of claims 1 and 13, and it treats them as directed to the same subject matter, albeit from the different perspectives: the provider (claim 1) and the patient (claim 13). *Compare* D.I. 1 at ¶¶ 37-50 (alleged infringement of claim 1) *with* ¶¶ 51-54 (alleged infringement of claim 13) and ¶ 53 ("Candid provides instructions to users regarding how to perform each of the steps set forth in claim 13 *in the manner described above.*") (emphasis added).

Moreover, all of the dependent claims are directed to the same abstract idea and simply append additional steps incidental to providing dental aligners to the patient without the dentist or orthodontist physically seeing the patient.[3] Claim 2 merely adds that the dental or orthodontic professional sees the patient via videoconference while claim 12 precludes this, reciting that the dentist or orthodontist does not physically or virtually see the patient. Claims 3 and 5

---

repositioning the one or more teeth of the user, and the user receives orthodontic treatment without ever having physically seen the approving dental or orthodontic professional").

[3]     The Complaint vaguely alleges infringement of "various dependent claims," without identifying any specific claims. At least one court has held that the moving party need not address claims not specifically identified in the complaint. *See Am. Well Corp. v. Teladoc, Inc.*, 191 F. Supp. 3d 135, 140 (D. Mass. 2016).

recite additional steps for generating the treatment plan, including the fundamental concept of defining positions of the teeth throughout the treatment. Claims 4, 14, and 17 recite the idea of having the patient also approve the treatment plan. Claim 6 is directed to the steps of identifying a time for the appointment, determining if the appointment time is available, and scheduling the appointment. Claim 7 is directed to fabricating the aligners by using positive molds and thermoforming material to the molds to make the aligners. Claims 8-11, 18, 19, and 25-27 recite sending automated messages to the patient confirming scheduling of the appointment and sending automated reminder messages based on some threshold. Likewise, claims 21-23 and 28-30 are also directed to sending automated messages to the patient, but in these instances sending an automated message after the appointment to indicate that the treatment plan had been generated and the aligners would be sent to the patient. None of the dependent claims describes any kind of technological improvement, and like the independent claims, they are all directed to the abstract idea itself.

Because all of the claims are "substantially similar in that they recite little more than the same abstract idea," it is sufficient to treat claim 1 as

representative in the § 101 analysis. *Content Extraction & Trans. LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).[4]

**B.    THE '522 PATENT CLAIMS ARE INVALID UNDER 35 U.S.C. § 101 BECAUSE THEY ARE DIRECTED TO PATENT-INELIGIBLE SUBJECT MATTER**

**1. The Claims are Directed to the Abstract Idea of Teleorthodontics**

It is evident from the face of the claims that they are directed to nothing more than the abstract idea of teleorthodontics: providing dental aligners directly to the patient without the patient ever physically seeing a dentist or orthodontist:

- First, the service provider receives a request to schedule an appointment. *See* '522 patent, col. 20:37-46.

- Second, the service provider schedules the appointment. *See id.*, col. 20:47-49.

- Third, the service provider communicates a message to the patient confirming the appointment. *See id.*, col. 20:50-53.

- Fourth, a technician conducts the services (*i.e.*, an intraoral scan of the patient's mouth). *See id.*, col. 20:54-57.

---

[4]    SDC itself treated claim 1 as representative of the other claims during prosecution of the '522 patent. *See* Ex. B at 11, 14; Ex. D at 13-14, 20-21; Ex. E at 13-14, 20-22.

- Fifth, a treatment plan for the patient is generated. *See id.*, col. 20:58-61.

- Sixth, the orthodontist approves the treatment plan. *See* '522 patent *id.*, col. 20:62-65.

- Seventh, aligners are produced at a fabrication site. *See id.*, col. 20:66-21:3.

- Finally, the aligners are sent from the fabrication site directly to the user. *See id.*, col. 21:4-7.

Like in *Ultramercial*, "[t]his ordered combination of steps recites an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715. Seeing past the generic computer components (*i.e.*, "appointment management system," "treatment plan computing system," "intraoral scanning site computing systems," and "fabrication computing systems") and the off-the-shelf iTero® intraoral scanner,[5] the '522 patent claims amount to nothing more than the fundamental and abstract business practice of providing dental aligners to patients without the dentist or orthodontist ever physically seeing the patient.

But fundamental business practices are abstract ideas and are not patentable. *See Alice*, 573 U.S. at 219-220; *see also Am. Well*, 191 F. Supp. 3d

---

[5]    iTero® scanners are made by Align Technology, Inc., not by SDC. *See Align*, 339 F. Supp. 3d at 439.

at 142 (setting up consultations between patients and available healthcare providers); *Becton, Dickinson & Co. v. Baxter Int'l, Inc.*, 127 F. Supp. 3d 687, 692-93 (W.D. Tex. 2015) (pharmacist remotely supervises and verifies the work of a nonpharmacist); *Apollo Finance, LLC v. Cisco Sys., Inc.*, 190 F. Supp. 3d 939, 945 (C.D. Cal. 2016) (teaching practical skills at geographically separate locations over the internet); *IPLearn-Focus, LLC v. Microsoft Corp.*, No. 14-cv-00151-JD, 2015 WL 4192092, at *4 (N.D. Cal. Jul. 10, 2015) (teaching while sensing and adjusting to students' behavioral patterns), *aff'd without opinion*, 667 F. App'x 773 (Fed. Cir. 2016).

Indeed, Chief Judge Stark recently held as abstract patent claims directed to a method for creating a dental plan for repositioning a patient's teeth in adjudicating a defendant's motion to dismiss under Rule 12(b)(6). *See Align*, 339 F. Supp. 3d at 453-56. Doing so without the dentist or orthodontist physically seeing the patient, as claimed in the '522 patent, is no less abstract.

In *Align*, the court analyzed subject matter eligibility of claims in four patents and held that claims in two of those patents were patent ineligible, while claims in two other patents were patent eligible:

| Patent-Ineligible Subject Matter | Patent-Eligible Subject Matter |
|---|---|
| **'850 patent:** Describing an orthodontic treatment plan.<br><br>*Align*, 339 F. Supp. 3d at 453-56. | **'873 patent:** Improved method for generating a model of an intraoral site by automatically locking the images of the clean stump such that subsequent scans that may capture the unclean stump are ignored during the creation of the model.<br><br>*Align*, 339 F. Supp. 3d at 449-51. |
| **'065 patent:** Modifying a finish line of a dental prosthesis.<br><br>*Align*, 339 F. Supp. 3d at 451-53. | **'149 patent:** Improved method for creating dental templates that could guide the placement of the brackets without the brackets necessarily being contained within the template.<br><br>*Align*, 339 F. Supp. 3d at 456-57. |

The '522 patent claims are similar to those found as abstract, and distinguishable from those found as patent eligible, in the *Align* case. In both the '522 patent and the *Align* '850 patent, three-dimensional data is captured using an intraoral scanner. *Compare* '522 patent, col. 20:54-57 *with Align*, 339 F. Supp. 3d at 454. Both the '522 patent and the *Align* '850 patent communicate the three-dimensional data to a computer so a treatment plan can be generated and ultimately approved by an orthodontist. *Compare* '522 patent, col. 20:58-65 *with Align*, 339 F. Supp. 3d at 454. The only differences between claim 1 of the '522 patent and claim 1 of the *Align* '850 patent are: (1) scheduling the appointment and generating a confirmation message; (2) preparing the treatment plan without the dentist or orthodontist physically seeing the patient; and (3) fabricating the aligners

and sending them directly to the patient. But these activities are all ancillary to the abstract idea itself and do not make the claim as a whole any less abstract. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (finding additional recited steps are "an ancillary part" of the abstract idea and do not make the claims patent eligible); *see also Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018) (same). As the *Align* court put it in finding the '850 patent invalid, none of these things represent "a technological improvement that supplies an inventive concept." *Align*, 339 F. Supp. 3d at 455.

The '522 patent claims are wholly unlike those found patent eligible in *Align.* The *Align* '873 patent purported to solve the problem of degrading the quality of the intraoral images by averaging data taken over several scans of the same area, with the first scan having the entire finish line (defined as the border between a tooth's unground and ground portion) exposed, and subsequent scans where the gumline collapses back over the finish line after a brief period. *See Align*, 339 F. Supp. 3d at 450. To solve this degradation issue, *Align* '873 claim 1 was directed to an approach of automatically locking the first scanned image such that subsequent scans of the same area would be ignored during creation of the model. *See id.*

Similarly, the *Align* '149 patent was directed to a particular system for creating a dental template that directs the dental professional to the precise location

of where the orthodontic bracket should be placed based upon a geometric fit with the patient's teeth. *See id.* at 456-57. This system purportedly solved the problem of indirect bonding of orthodontic brackets to teeth where the bracket may become dislodged during the removal of the dental template. *See id.*

The '522 patent claims at issue here are not directed to any concrete technical improvement. They are not directed to any improvement in an "appointment management system," "treatment plan computing system," "intraoral scanning site computing system," or "fabrication computing system." Nor are they directed to any improvement in intraoral scanning technology, the generation of treatment plans, or the fabrication of aligners.

Instead, they are simply directed to the abstract idea itself of providing orthodontic services and providing aligners directly to the patient without having the dentist or orthodontist physically see the patient. *See* D.I. 1 at ¶¶ 2-3, 16, 19, 24, 25, 33 (alleging that "Candid employs a virtually identical teledentistry service to the one invented by SDC and subject of the '522 patent"); *see also* Ex. B at 11-13; Ex. D at 2-3, 5, 7, 15; Ex. E at 1-3, 5, 7, 15. There is no technological advance claimed by the '522 patent—it simply uses "today's technology" to provide orthodontic services to the patient without the dentist or orthodontist physically seeing the patient. *See* D.I. 1 at ¶ 16; *see also* '522 patent, col. 13:43-45 (using an existing iTero® intraoral scanner), 19:63-65 (stating that one way of implementing

the embodiments described in the '522 patent is through the use of "existing computer processors"). This is not patentable subject matter.

The '522 patent claims are also similar to other telehealth patents that courts have determined to be non-patentable under § 101. For example, in *Becton, Dickinson & Co.*, the Western District of Texas held as ineligible claims directed to a method and system for remotely supervising and verifying the technical pharmacy functions performed by a non-pharmacist. 127 F. Supp. 3d at 689, 692-93. The court reasoned that "[i]t is undeniable that supervision and verification of a nonpharmacist's work is an abstract idea," and "[t]he fact that the pharmacist is 'remote' is of no added consequence to the abstract nature of the concept." *Id.* at 693.

The same holds true for the '522 patent claims at issue here—the dentist or orthodontist is not present during the intraoral scan and never physically sees the patient. *See* '522 patent, col. 22:26-30, 22:31-40, 23:42-48, 24:46-56; *see also* col. 13:45-60, 15:15-26. Like in *Becton, Dickinson & Co.*, the fact that the dentist or orthodontist is remote is of no added consequence to the abstract nature of providing orthodontic services to the patient.

As another example, in *American Well*, the District of Massachusetts held as ineligible claims directed to setting up consultations between patients and available healthcare providers. 191 F. Supp. 3d at 142. The court reasoned that

the claims simply use conventional technology, *i.e.*, a computer, to connect a patient with an available doctor, which amounted to an embodiment of the abstract idea itself. *Id.* at 144. The court also recognized that this idea was nothing more than "involving methods of organizing human activity," which has been held to be abstract. *Id.* at 143.

So too here. The '522 patent claims are directed solely to a human activity—*i.e.*, providing orthodontic services to the patient—and the claims do so using only conventional technology (*i.e.*, conventional computers and off-the-shelf intraoral scanners).

Accordingly, under step one of the *Alice* framework, all of the '522 patent claims are directed to the abstract idea of teleorthodontics: providing dental aligners directly to the patient without the patient ever physically seeing a dentist or orthodontist.

### 2. The '522 Patent Claims Lack Inventive Concept

Under *Alice* step two, the Court must search for an "inventive concept." 573 U.S. at 217-18. But here, nothing in SDC's claims is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* Thus, all of the claims are invalid under § 101 for being directed to an abstract idea and failing to include an "inventive concept" to survive *Alice* step two.

The "inventive concept" and "transformation" of the abstract idea into something patentable must be something more than a recitation of the abstract idea while adding "apply it." *Id.* at 221. But that is exactly what the '522 claims do— they claim the abstract idea of teleorthodontics: providing dental aligners directly to the patient without the patient ever physically seeing a dentist or orthodontist, and they say "apply it" using conventional computer components and off-the-shelf conventional intraoral scanners. This does not amount to an inventive concept.

The Complaint itself confirms that the '522 patent is simply directed to a purportedly "revolutionary workflow," "business model," and "teledentistry service." *See, e.g.,* D.I. 1 at ¶¶ 3, 4, 14, 33. Nothing in the Complaint, the '522 patent, or the prosecution history evinces that the '522 patent is directed to anything but this abstract business practice.

Moreover, the lack of a transformative "inventive concept" is abundantly clear from the prosecution history. There, in overcoming the Breeland reference, the inventors acknowledged that the supposed advance over the prior art was providing dental services to the patient without the dentist or orthodontist physically seeing the patient and sending the dental aligners directly to the patient. *See* Ex. B at 11-13; Ex. D at 2-3, 5, 7, 15; and Ex. E at 1-3, 5, 7, and 15. This is simply the abstract idea itself, which is not sufficient to transform the idea into patent-eligible subject matter. *See BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d

1281, 1290 (Fed. Cir. 2018) ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").

Furthermore, the Complaint and the '522 patent specification confirm that only conventional components, described in purely functional and generic terms, are used in applying the claimed teleorthodontics methods and systems. For example, the Complaint admits that doctors interact with their patients remotely by "using today's technology." D.I. 1 at ¶ 16. In addition, the claimed intraoral scanner is a conventional off-the-shelf iTero® scanner. *See* '522 patent, col. 13:45-47. And, the various "computer systems" recited throughout the claims are nothing more than just that—references to a generic computer. At most, the specification describes the "appointment management computing system" as comprising a processor and memory. *See, e.g.*, *id.*, col. 4:4-49. The other "computing systems" recited in the claims are not described in any further detail. *See, e.g.*, *id.*, col. 15:35-37, 15:48-51. Indeed, the '522 patent admits that one way of implementing the embodiments described therein is through the use of "existing computer processors." *Id.*, col. 19:63-65. The '522 patent does not disclose any improvements to any of the computing systems or other equipment mentioned in the claims. Rather, such systems and equipment are merely used in their conventional manner to implement the abstract idea. *See Intellectual Ventures I*

*LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (2017) (no inventive concept where the generic computer components describe the "functions of the abstract idea itself").

It is well-settled that for a computer "to be deemed meaningful in the context of [the *Alice*] analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry." *Align*, 339 F. Supp. 3d at 456 (quoting *Content Extraction*, 776 F.3d at 1347-48). And like *Align*, the '522 patent "does not disclose a new method by which a 3D model of teeth could be made" (*see* 339 F. Supp. 3d at 456), nor does it disclose a new method for scheduling and confirming appointments; nor does it purport to have invented a new way of generating treatment plans or fabricating aligners. "Instead, the patent calls for the abstract idea of [providing teleorthodontic services] to be implemented [using] generic computers" and conventional scanning technology. *Id.*

Accordingly, all claims of the '522 patent fail to recite an inventive concept and thus are directed to patent-ineligible subject matter under Section 101.

## VI.     <u>CONCLUSION</u>

The '522 patent claims are directed to the abstract idea of teleorthodontics: providing dental aligners directly to the patient without the patient ever physically seeing a dentist or orthodontist. Further, the '522 patent

claims lack an inventive concept.  Accordingly, they are all invalid under 35 U.S.C. § 101 as being directed to a patent-ineligible abstract idea.  This lawsuit therefore should be dismissed with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com

*Attorneys for Defendant Candid Care Co.*

OF COUNSEL:

Michael P. Sandonato
Sean M. McCarthy
VENABLE LLP
Rockefeller Center
1270 6th Avenue
New York, NY  10020
(212) 307-5500

Edmund J. Haughey
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC  20001
(202) 344-4000

June 19, 2020

## CERTIFICATION OF COMPLIANCE

The foregoing document complies with the Court's type-volume limitations, as it was prepared with Microsoft Word, using Times New Roman, 14 point font, and contains 4,972 words as counted by Microsoft Word, excluding the case caption, signature block, table of contents, and table of authorities.

/s/ Rodger D. Smith II
_____
Rodger D. Smith II (#3778)

# CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 19, 2020, upon the following in the manner indicated:

Kevin M. Capuzzi                                    *VIA ELECTRONIC MAIL*
Noelle B. Torrice
BENESCH FRIEDLANDER COPLAN & ARONOFF
222 Delaware Ave, Suite 801
Wilmington, DE 19801
*Attorneys for Plaintiff SmileDirectClub, LLC*

Manish K. Mehta, Esquire                            *VIA ELECTRONIC MAIL*
Suzanne M. Alton de Eraso, Esquire
Kalpesh K. Shah, Esquire
BENESCH FRIEDLANDER COPLAN & ARONOFF
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
*Attorneys for Plaintiff SmileDirectClub, LLC*

Michael S. Weinstein, Esquire                       *VIA ELECTRONIC MAIL*
BENESCH FRIEDLANDER COPLAN & ARONOFF
200 Public Square, Suite 2300
Cleveland, OH 44114
*Attorneys for Plaintiff SmileDirectClub, LLC*


                                        */s/ Rodger D. Smith II*
                                        _____
                                        Rodger D. Smith II (#3778)