IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SMILEDIRECTCLUB, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-583 (CFC) |
| | ) |
| CANDID CARE CO., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT CANDID CARE CO.'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

OF COUNSEL:

Michael P. Sandonato
Sean M. McCarthy
VENABLE LLP
Rockefeller Center
1270 6th Avenue
New York, NY 10020
(212) 307-5500

Edmund J. Haughey
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4000

July 31, 2020

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
cclark@mnat.com

*Attorneys for Defendant Candid Care Co.*

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................1

II. ARGUMENT ......................................................................................................2

    A. A CLAIM DIRECTED TO MANUFACTURING DOES NOT AVOID A SUBSTANTIVE § 101 ANALYSIS ...................................2

    B. THE CLAIMS ARE DIRECTED TO THE ABSTRACT IDEA OF TELEORTHODONTICS ...................................................................3

    C. THE CLAIMS CONTAIN NO INVENTIVE CONCEPT ...................8

    D. NO CLAIM CONSTRUCTION ISSUE PREVENTS A § 101 DETERMINATION ...................................................................9

    E. CLAIM 1 IS REPRESENTATIVE ......................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ...................................................................................... 3, 8

*Am. Axle & Manuf., Inc. v. Neapco Holdings LLC*,
  309 F. Supp. 3d 218 (D. Del. 2018) ......................................................... 2, 3, 5, 6

*Am. Axle & Manuf., Inc. v. Neapco Holdings LLC*,
  939 F.3d 1355 (Fed. Cir. 2019) ...................................................................... 2, 4

*BSG Tech LLC v. BuySeasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ........................................................................ 9

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ........................................................................................ 7

*Epic IP LLC v. Backblaze, Inc.*,
  351 F. Supp. 3d 733 (D. Del. 2018) ............................................................... 10

*Nike, Inc. v. Puma N. Am., Inc.*,
  No. 18-10876-LTS, 2018 WL 4922353 (D. Mass. Oct. 10, 2018) ....................... 7

## I. INTRODUCTION

A main thrust of SDC's Opposition is that the claims are directed to "producing aligners" and improve upon methods that "required the creation of dental impressions of a patient's teeth." But SDC did not invent producing dental aligners or using intraoral scanners instead of taking dental impressions, and the claims are not directed to any improvements on those things. Instead, as repeatedly explained throughout the Complaint, patent specification, claims, prosecution history, and SDC's Opposition, the claims are directed solely to the workflow of providing dental aligners directly to the patient without the patient ever physically seeing a dentist.

Recognizing its weaknesses on the merits, SDC tries to dodge them and delay the day of reckoning by identifying imaginary claim construction disputes. For example, SDC argues that Defendant ignores the preambles, which according to SDC should be construed as limiting the claims to "systems or methods for 'producing aligners.'" (D.I. 17, at 7). There is no such dispute: the bodies of the claims expressly require producing the aligners, and it is therefore immaterial whether the preamble is also construed to be limiting in that regard.

The § 101 issue is ripe for adjudication.

## II. ARGUMENT

### A. A CLAIM DIRECTED TO MANUFACTURING DOES NOT AVOID A SUBSTANTIVE § 101 ANALYSIS

SDC's argument that the claims are not abstract because they cover "specific systems and methods directed to producing aligners, *i.e.*, a tangible product" (*see, e.g.*, D.I. 17, at 2; 12-17) fails. In *American Axle* the patentee made much the same argument, which was rejected by Chief Judge Stark and the Federal Circuit on appeal. Contrary to SDC's arguments that claims reciting "a manufacturing process by which a finished product is created" are not abstract (*see* D.I. 17, at 17), the Federal Circuit held:

> To determine what the claims are "directed to" at step one, we look to the "focus of the claimed advanced." … There is no legal principle that a claim to a method of manufacturing cannot be directed to [ineligible subject matter], nor are there any cases saying so.

*Am. Axle & Manuf., Inc. v. Neapco Holdings LLC*, 939 F.3d 1355, 1361 (Fed. Cir. 2019) (internal citation omitted) ("*Am. Axle II*").

In *American Axle*, Chief Judge Stark held that claims directed to a "method for manufacturing a shaft assembly of a driveline system" were patent ineligible. *Am. Axle & Manuf., Inc. v. Neapco Holdings LLC*, 309 F. Supp .3d 218, 221-22, 223 (D. Del. 2018) ("*Am. Axle I*"), *aff'd*, 939 F.3d 1355 (Fed. Cir. 2019). In so doing, Judge Stark rejected plaintiff's assertions that the claims were eligible

2

<mark>simply because they were directed to industrial processes for manufacturing a tangible article:</mark>

> [Plaintiff] contends that the Asserted Claims are patent-eligible because they are directed to industrial processes for manufacturing very large automotive components, rather than any law of nature or natural phenomenon. … But the Asserted Claims do not disclose a method of manufacturing a propshaft; instead, considered as a whole, they are directed to the mere application of Hooke's law, and they fail to instruct ***how*** to design the tuned liners or manufacture the driveline system to attenuate vibrations.

*Am. Axle I*, 309 F. Supp. 3d at 225 (emphasis in original).

As made clear by the *American Axle* decisions, under *Alice* step one the question of what the claims are "directed to" is answered by looking at the "focus of the claimed advance," irrespective of whether claim limitations on their face recite a method of manufacturing or a tangible product. Here, there can be no doubt that the focus of the alleged advance is providing aligners without the patient physically seeing a dentist, and has nothing to do with fabricating the aligners themselves. The token and generic recitation of "producing" aligners cannot save the claims.

### B. THE CLAIMS ARE DIRECTED TO THE ABSTRACT IDEA OF TELEORTHODONTICS

The '522 patent claims are all directed to the abstract idea of ***teleorthodontics: providing dental aligners directly to the patient without the***

<mark>3</mark>

*patient ever physically seeing a dentist or orthodontist*.  This is evident from the face of the claims.  For example, "receiving … a request to schedule an appointment at an intraoral scanning site" ('522 patent, col. 20:27-39) has nothing to do with manufacturing or production.  Nor do "scheduling … the appointment" (col. 20:47-49), "generating … a [confirmation] message" (col. 20:50-53), "conducting … the intraoral scan" (col. 20:54-57), "causing generation … of a treatment plan" (col. 20:58-61); "receiving an indication of an approval of the treatment plan" (col. 20:63-65), and "sending the plurality of aligners from the fabrication site directly to the user" (col. 21:4-7).

These steps describe the overall workflow of providing orthodontic treatment, not the manner in which the aligners are made.  The step of "producing" the aligners is just one of many steps in that workflow.  The Complaint itself confirms that the '522 patent is directed to a purportedly "revolutionary workflow," "business model," and "teledentistry service,"[1] where the abstract step of "producing" is just one part.  *See, e.g.,* D.I. 1 at ¶¶ 3, 4, 14, 33.  Nothing in the Complaint, the patent, or the prosecution history evinces that the patent is directed to anything but this abstract business practice.

---

[1]   SDC faults Defendant for "oversimplifying" the claimed subject matter as being directed to "teleorthodontics," but itself uses the term "teledentistry."  *See, e.g.*, D.I. 1 at ¶¶ 16, 33.

4

In searching for what the claims are "directed to," the court must look to the "focus of the claimed advance." *Am. Axle II*, 939 F.3d at 1361. The focus of the claimed advance—as described by the Complaint, the patent specification, and the prosecution history—is providing dental aligners directly to the patient without the patient ever physically seeing a dentist. Nothing else. *See* D.I. 1 at ¶¶ 2-3, 16, 19, 24, 25, 33; Ex. B at 11-13; Ex. D at 2-3, 5, 7, 15; Ex. E at 1-3, 5, 7, 15. SDC itself refers to this exhaustively as the focus of the claimed advance. *See* D.I. 17 at 1 (emphasizing purportedly novel concept of "providing treatment without ever having to physically see the approving dental or orthodontic professional"), 2 (same), 4 (same), 5 (same), 12 (same), 14 (same), 15 (same), 19 (same), 20 (same), 21 (same).

Like in *American Axle*, the "[a]sserted claims do not disclose a method of manufacturing [dental aligners]; instead, considered *as a whole*, they are directed to the mere [abstract idea of providing aligners directly to the patient without the patient ever physically seeing a dentist or orthodontist], and they fail to instruct *how* to [produce aligners based on the treatment.]." *Am. Axle I*, 309 F. Supp. 3d at 225 (emphasis added).

The asserted claims do not recite any improvement in the manufacturing process of producing aligners, and only include this high-level step as a part of the entire business process. *See, e.g.*, '522 patent, col. 20:66-67

5

("producing, at a fabrication site, a plurality of aligners based on the treatment plan"). There is no recited technological advance in manufacturing, and the claims do not instruct *how* to produce aligners—only that they are produced based on the treatment plan. As for the system claim, it generically refers to a "fabrication computing system" and "equipment configured to produce a plurality of aligners," but again, does not recite any purported improvements to those recited elements or explain *how* those components are configured to produce aligners. *See, e.g.*, '522 patent, col. 24:1-5.

Dependent claim 7 purports to elaborate on the "producing" step of claim 1, by making perfunctory references to "generating a plurality of positive molds" and "thermoforming polymer material" to the molds to make the aligners. But these sub-steps do not change the fact that "focus of the claimed advance" is the workflow and not the manufacturing. *See Am. Axle I*, 309 F. Supp. 3d at 225. Notably, SDC points to these sub-steps to argue that claim 1 should not be considered representative (addressed in Section E below), but never suggests that using positive molds or thermoforming are anything beyond routine and conventional. Nor could they, as both the specification and the prosecution history make clear that those things were well known. *See, e.g.*, '522 patent, col. 1:24-42 (positive molds traditionally used in the prior art); Ex. A, at 11-12 (prior art

disclosing using positive molds and thermoforming a polymer material to fabricate aligners).

*Diehr* and *Nike* are easily distinguishable. In *Diehr*, the Supreme Court held the process was patentable because the claims involved "the transformation of an article, in this case raw, uncured synthetic rubber, into a different state or thing," and the claims "describe in detail a step-by-step method for accomplishing such, beginning with the loading of a mold with raw, uncured rubber and ending with the eventual opening of the press at the conclusion of the cure." *Diamond v. Diehr*, 450 U.S. 175, 184 (1981). The Court emphasized that a patentable process is "an act or series of acts performed upon the subject-matter to be transformed and reduced to a different state or thing," and that "[t]ransformation and reduction of an article 'to a different state or thing' is the clue to the patentability of a process claim." *Id.* at 183-84.

In *Nike*, the claims themselves were directed to detailed steps on how to manufacture the tangible article, and the detailed construction of the tangible article. *See Nike, Inc. v. Puma N. Am., Inc.*, No. 18-10876-LTS, 2018 WL 4922353, at *1, 2 (D. Mass Oct. 10, 2018).

Unlike *Diehr* and *Nike,* SDC's claims do not recite detailed steps of how to fabricate aligners, and only generically recite that step as incidental to the overall abstract process. The claims do not describe how the aligners are

7

fabricated in the producing step, only that they are. Saying "produc[e] … the aligners" is no more than saying "apply" the abstract idea, which is legally insufficient to confer patent eligibility. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 221 (2014) ("Stating an abstract idea 'while adding the words 'apply it'' is not enough for patent eligibility.").

### C. THE CLAIMS CONTAIN NO INVENTIVE CONCEPT

SDC ends its brief with the generalized proposition that "the question of what is new or conventional raises fact issues not appropriately resolved on a Rule 12(b)(6) motion." D.I. 17 at 21. But SDC does not point to any fact issues germane to this case, and in fact none exist.

The claims recite the steps of conducting an intraoral scan and producing aligners, but there is nothing about these steps that is inventive and there are no disclosed improvements. SDC purports to have invented eliminating taking dental impressions by using intraoral scanners (D.I. 17, at 19) but that is not true, as the specification admits that the scanner is a conventional, off-the-shelf piece of equipment. *See* '522 patent, col. 13:45-47 (identifying the iTero® scanner). And while SDC repeatedly points to the producing step, it never suggests that it invented anything having to do with producing aligners.

Thus, "the claims at issue amount to 'nothing significantly more' than" the idea of providing dental aligners directly to the patient without the patient

ever physically seeing a dentist or orthodontist. *Alice*, 573 U.S. at 225. That is the abstract idea itself, and the recitation of the abstract idea cannot provide the "inventive concept." [2] *See id.* at 221; *see also BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").

### D. NO CLAIM CONSTRUCTION ISSUE PREVENTS A § 101 DETERMINATION

Recognizing the weakness in its substantive arguments, SDC tries to avoid a ruling at the pleading stage by attempting to create a claim construction issue where none exists.

First, SDC argues that the preambles should be construed as limiting, and thus are directed to a method of "producing aligners." *See* D.I. 17, at 7. Defendant agrees that "producing aligners" is a step of the independent claims, because it is expressly recited in the body. As discussed above, this does not avoid a finding of ineligibility. There is no claim construction dispute with respect to the preamble that is germane to the § 101 issue.

Second, SDC offers that there is a claim construction question as to "whether the steps of the claimed methods must be performed in a specific order."

---

[2] Defendant by no means concedes that SDC invented even that.

*See* D.I. 17 at 7-8. But SDC does not even take a position on that issue, much less explain how construing them in a specific order might impact the § 101 analysis.

Third, SDC vaguely asserts that "it is almost certain there will be other disputes between the parties as to claim construction," but does not identify these disputes or how they would alter the ineligibility analysis. D.I. 17 at 8.

It was incumbent upon SDC to identify "any claim construction issue that would alter the Court's judgment as to the disposition of the section 101 motion." *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 752 (D. Del. 2018) (Bryson, J.). SDC has failed to do so. Because the claims are "straightforward and not technical in nature, and [SDC] has not pointed to any terms from the asserted claims that would likely give rise to a material dispute over claim construction" that would alter the disposition of the § 101 determination, it is proper to decide this motion at the pleading stage. *Id.*

Finally, SDC is wrong that Defendant did not conduct a meaningful analysis on the representativeness of claim 1. Defendant explained the similarities between independent claims 1, 13, 20, and 24, explained that the Complaint itself treats claims 1 and 13 as directed to the same subject matter, and demonstrated that the additional elements of the dependent claims do not recite or describe any kind of technological improvement, and instead are directed to the same abstract idea. *See* D.I. 13 at 9-11.

10

Moreover, after criticizing Defendant's analysis, SDC proceeds to treat the claims as being directed to the same subject matter:

> E. **CLAIM 1 IS REPRESENTATIVE**
>
> **Claim 1** is directed to "[a] method for producing aligners," and claims a specific method for producing such aligners using a specified set of equipment and requiring that the approving professional does not physically see the user during the process. … **Claim 24 <u>is also directed</u>** to "[a] method of producing aligners in accordance with a treatment plan using specified equipment, where the user does not see the approving professional during the process. … <u>**Similarly**</u>**, claim 13** describes a method of an intraoral scan to generate three-dimensional data of a user's mouth, used to fabricate sets of aligners based on a treatment plan, without the user having seen the approving professional." …
>
> Rather, **the claims** are directed to manufacturing and fabrication workflow process and systems ….

D.I. 17 at 12 (emphasis added). By SDC's own admission and treatment, its representativeness argument must fail.

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | */s/ Rodger D. Smith II* |
| OF COUNSEL: | Rodger D. Smith II (#3778)<br>Cameron P. Clark (#6647)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>rsmith@mnat.com<br>cclark@mnat.com |
| Michael P. Sandonato<br>Sean M. McCarthy<br>VENABLE LLP<br>Rockefeller Center<br>1270 6th Avenue<br>New York, NY 10020<br>(212) 307-5500 | *Attorneys for Defendant Candid Care Co.* |
| Edmund J. Haughey<br>VENABLE LLP<br>600 Massachusetts Avenue, NW<br>Washington, DC 20001<br>(202) 344-4000 | |
| July 31, 2020 | |

12

## **CERTIFICATION OF COMPLIANCE**

The foregoing document complies with the Court's type-volume limitations, as it was prepared with Microsoft Word, using Times New Roman, 14 point font, and contains 2,498 words as counted by Microsoft Word, excluding the case caption, signature block, table of contents, and table of authorities.

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)

# CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 31, 2020, upon the following in the manner indicated:

| | |
|---|---|
| Kevin M. Capuzzi<br>Noelle B. Torrice<br>BENESCH FRIEDLANDER COPLAN & ARONOFF<br>1313 North Market Street, Suite 1201<br>Wilmington, DE  19801<br><br>*Attorneys for Plaintiff SmileDirectClub, LLC* | *VIA ELECTRONIC MAIL* |
| Manish K. Mehta, Esquire<br>Suzanne M. Alton de Eraso, Esquire<br>Kalpesh K. Shah, Esquire<br>BENESCH FRIEDLANDER COPLAN & ARONOFF<br>71 South Wacker Drive, Suite 1600<br>Chicago, IL  60606<br><br>*Attorneys for Plaintiff SmileDirectClub, LLC* | *VIA ELECTRONIC MAIL* |
| Michael S. Weinstein, Esquire<br>BENESCH FRIEDLANDER COPLAN & ARONOFF<br>200 Public Square, Suite 2300<br>Cleveland, OH  44114<br><br>*Attorneys for Plaintiff SmileDirectClub, LLC* | *VIA ELECTRONIC MAIL* |

/s/ *Rodger D. Smith II*

Rodger D. Smith II (#3778)